# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,           )
                             )
                             )
                             )
          v.                 )
                             )
                             )
                             )          Cr. A. No. 1311001403
                             )
JONATHAN AZOULAY,            )
                             )
                             )
                             )
          Defendant.         )


Submitted: July 23, 2014
Decided: August 20, 2014

Christina M. Kontis                          John P. Deckers, P.A.
Deputy Attorney General                      800 North King Street
820 N. French Street, 7th Floor   Wilmington, DE 19801
Wilmington, DE 19801                         *Attorney for Defendant*
*Attorney for the State of Delaware*

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Jonathan Azoulay ("Azoulay") was arrested on November 1, 2013, and was subsequently charged with the offense of driving under the influence of drugs or alcohol ("DUI offense") in violation of 21 *Del. C.* Section 4177(a)(1). An investigation ensued, and a blood sample was drawn from Azoulay. On April 14, 2014, Azoulay timely noticed the present Motion to suppress the blood draw. A hearing on the motion was held on June 4, 2014, with the State presenting Corporal Peitlock of the Delaware State Police as the sole witness.

### FACTS

At the hearing, Corporal Peitlock testified to the following. On November 1, 2013, Corporal Peitlock was on patrol when he observed a blue Ford Econoline drifting in and out of

its lane of travel on Philadelphia Pike. As the vehicle approached Cauffiel Parkway, it suddenly braked and turned while in the left hand travel lane and failed to signal within 300 feet of making the turn. Corporal Peitlock activated his emergency lights and pulled the vehicle over before approaching.

Corporal Peitlock made contact with the driver and identified him as Azoulay. Additionally, Corporal Peitlock testified that Azoulay's body was partially out of the vehicle, and unprompted, stated that he nearly missed his turn. Corporal Peitlock testified that he instructed Azoulay to remain in the vehicle. Corporal Peitlock detected an odor of "burnt marijuana" emanating from the vehicle and observed Azoulay as having bloodshot glassy eyes. Corporal Peitlock asked Azoulay to exit the vehicle. After asking about any illegal items that Azoulay might have on him, Azoulay responded that he had a knife in his pocket. Corporal Peitlock placed Azoulay under arrest and searched Azoulay's vehicle, whereupon he discovered marijuana.

While Corporal Peitlock was transporting Azoulay back to Troop 1, and without administering any *Miranda* warnings, he asked Azoulay a series of questions about Azoulay's marijuana usage.[1] This resulted in Azoulay admitting to his consumption of marijuana. Following this, Corporal Peitlock stated, "We're gonna go back to Troop 1 and when we get there I'm gonna do some field sobriety tests on you and then we'll take it from there." Corporal Peitlock later said, "I need to check your level of impairment." After arriving at Troop 1 and administering field sobriety tests, Corporal Peitlock told Azoulay that he was "going to draw blood," and then presented the defendant with a consent form, which Azoulay signed. The form states in relevant part that the person subject to the search has "knowingly and voluntarily given

---

[1] The State has admitted that this was in violation of Azoulay's *Miranda* rights.

[his/her] consent to search without fear, threat, or promise (express or implied). . . . [he/she] ha[s] been advised by Corporal Peitlock that [he/she] ha[s] the right to refuse giving [his/her] consent to search." Azoulay signed the form at approximately 3:40 AM, roughly an hour and a half after the arrest.

Azoulay argues that the violation of his *Miranda* rights, along with the authoritative nature and phrasing of Corporal Peitlock's statements surrounding the DUI investigation, render any consent involuntary by reason of coercion and mere acquiescence to authority. Azoulay contends that, because consent was not voluntarily given, the resultant blood draw was in violation of his Fourth Amendment rights to be protected against unreasonable searches and seizures.

The State argues in response that there is no controlling precedent to suggest that consent obtained subsequent to a *Miranda* violation is necessarily involuntary. The State further argues that the blood draw is admissible because there was probable cause and because consent meets the four *Cooke* factors.

## LEGAL STANDARD

Under the United States and Delaware Constitutions, police officers are prohibited from effecting any search or seizure without consent, a warrant, or a recognized exception.[2]

Drawing blood is protected by the Fourth Amendment of the United States constitution, as well as Article I, Section Six of the Delaware Constitution. It is well settled that in the absence of a warrant, blood may only be drawn for the purposes of a DUI investigation when there is consent or a very narrow set of exceptions.[3] When the State relies on consent, the State must

---

[2] U.S. CONST. amend. IV; DEL. CONST. art. I, § 6.
[3] *Missouri v. McNeely*, 133 S.Ct. 1552 (2013).

3

demonstrate that consent was voluntary.[4] To determine whether consent was voluntarily given, Delaware courts examine four factors under the totality of the circumstances: (1) defendant's knowledge of the constitutional right to refuse consent; (2) defendant's age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with police; and (4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[5] This analysis also includes examining whether there were any "subtly coercive" elements to the police contact prior to the defendant giving consent.[6]

The Superior Court has left undecided whether consent obtained following a *Miranda* violation is necessarily involuntary as a matter of law.[7] There is no other precedent directly on point from Delaware courts. However, the United States Supreme Court held that a coerced statement in violation of *Miranda* does not create a *per se* bar against the admission of non-testimonial evidence resulting from that statement.[8] The Court has also held that blood samples do not provide the State with evidence of a testimonial or communicative nature.[9] Additionally, in *Patane*, the Court held that the subject matter of *Miranda* concerns the Self-Incrimination Clause of the Fifth Amendment, which provides protection from "making unwarned statements" to the police, not fruits of the unwarned statement.[10] Introduction of the non-testimonial fruit of a voluntary statement...does not implicate the [Self-Incrimination] Clause.[11] The *Patane* Court declined to extend Fifth Amendment protection beyond the presumption that statements taken

---

[4] *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).
[5] *Cooke v. State*, 977 A.2d 803 (Del. 2009).
[6] *State v. Harris*, 642 A.2d 1242 (Del. 1993).
[7] *State v. Colon*, 2001 WL 1729148 (Del. Super. Nov. 29, 2001).
[8] *U.S. v. Patane*, 542 U.S. 630 (2004).
[9] *Schmerber v. California*, 384 U.S. 757, 761 (1966).
[10] *Patane*, 542 U.S. 630 (2004).
[11] *Id.* at 643.

4

without sufficient *Miranda* warnings have been coerced only for certain purposes, and exclusion of the physical fruit of those coerced statements will occur only when necessary to protect the privilege against self-incrimination.[12] Thus, a failure to give a suspect *Miranda* warnings does not require suppression of the physical fruits of the suspect's unwarned but voluntary statements.[13]

## DISCUSSION

As stated above, concerning the admissibility of the blood sample, the law is well settled by the United States Supreme Court that a failure to give a suspect *Miranda* warnings under the Fifth Amendment does not require suppression of the physical fruits of the suspect's unwarned but voluntary statements under the Fourth Amendment.[14] As discussed in *Patane*, the Fifth Amendment's Self-Incrimination Clause "contains its own exclusionary rule that automatically protects those subjected to coercive police interrogations from the use of their involuntary statements;[t]his explicit textual protection supports a strong presumption against expanding the *Miranda* rule any further."[15] In *Patane*, after the defendant was arrested for violating a restraining order, defective Miranda warnings were given.[16] The arresting officer questioned the defendant about the location of a firearm he was previously in possession of, and after some initial resistance by the defendant, he admitted that the firearm was in his bedroom.[17] The defendant then gave consent to the arresting officer to enter and retrieve the pistol.[18] The Court held that although the statement was coerced and thus inadmissible, it did not prevent the

---

[12] *Id.* at 641.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 639.
[16] *Id.* at 635.
[17] *Id.*
[18] *Id.*

5

introduction of the weapon against the defendant in the prosecution's case-in-chief.[19] The instant case is analogous to *Patane* because in this case, Azoulay was arrested and interrogated without the administration of *Miranda* warnings. He admitted to his consumption of marijuana, and just as the defendant in *Patane* gave the arresting officer his consent to retrieve the pistol, Azoulay gave consent to the blood sample.

Furthermore, as *Schmerber* indicates, blood samples are non-testimonial statements, and consequently do not trigger the Fifth Amendment Self-Incrimination Clause.[20] Under these facts, it is clear that the blood sample, as non-testimonial, tangible evidence, is admissible, provided that Azoulay's consent was both voluntary and valid.

Turning to the issue of whether consent was validly and voluntarily given, under the first *Cooke* factor, in determining the depth of the knowledge held by the defendant of his Constitutional rights, the consent form does state that Azoulay has been informed of his right to refuse. While the *Miranda* violations might weaken this element, these two issues are not so closely related that a lack of proper advisement on Constitutional rights for one issue overrides the advisement of such rights on the other.

On the second factor, pertaining to age, intelligence, education, and language ability, there is not any evidence that suggests an issue for Azoulay. The brief accompanying this Motion does not assert any such deficiency or difficulty, and as such there is no basis to find any such deficiency.

Next, looking at the degree of cooperation given to the police, the testimony of Corporal Peitlock suggests that Azoulay was cooperative. When asked about any illegal items he had in

---

[19] *Id.* at 630.
[20] *Schmerber*, 384 U.S. 757, 761 (1966).

6

his possession, Azoulay admitted to having a knife. There is no indication that he was argumentative, disruptive, or anything else to suggest a lack of cooperation.

On the fourth factor, regarding length of detention, nature of questioning, or other coercive police behavior, the statements made by Corporal Peitlock to Azoulay possess a tenor of authority; however, given the totality of the circumstances, they appear more conversational than authoritative. There was no command to sign the consent form, no threat of action if he failed to do so, and nothing to suggest even subtle coercion on the part of the officer. Furthermore, the length of time was exceedingly short, and the consent came after Azoulay admitted to marijuana usage. It is conceivable that, faced with his prior admission, Azoulay would see no reason to withhold consent, and thus agree to the search of his own free will.

## CONCLUSION

For the above reasons, the State has proved by a preponderance of the evidence that Azoulay's consent to the blood draw was voluntarily given and that Azoulay's Constitutional rights were not violated. Accordingly, Defendant's Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED THIS** 20 **DAY OF AUGUST 2014.**

The Honorable Carl C. Danberg,
Judge

7